ST. LOUIS & S. F. R. CO. v. RICH et al.

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 17, 1914.)

1. CARRIERS (§ 229*)—LIVE STOCK—DELAY IN TRANSPORTATION—MARKET VALUE—PLACE OF DETERMINATION.

Where cattle were shipped, consigned to a commission company at the National Stockyards, East St. Louis, which was stated as the destination in the contract issued by a connecting carrier, when tendered to defendant it required a new contract, which stated the destination as St. Louis, and which was presented to and signed by the shipper at a time and under circumstances which did not enable him to read it, and defendant demanded and received the contract issued by the connecting carrier, the cattle, upon their arrival in St. Louis, without request or direction from the shipper, were taken to such stockyards, where delivery was made, and the freight charges paid, the contract and bills of defendant carried the numbers of the cars as given in the connecting carrier's contract, the office of the commission company was in East St. Louis, there was no charge for transportation from St. Louis to the stock yards, and it appeared that there were no commission merchants in St. Louis, and no market for cattle at that place, the facts showed that defendant must have known and did know that the destination of the shipment was the stockyards; and hence the measure of damages for a delay in transportation was the difference in market value at the stockyards.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 930, 963, 964; Dec. Dig. § 229.*]

2. EVIDENCE (§ 533*)—OPINION EVIDENCE—SUBJECTS OF EXPERT TESTIMONY.

A shipper of cattle of long standing, who was well qualified to give an opinion on that question, was properly permitted to testify what the shrinkage in the weight of cattle would be on an ordinary run as usually made, without any bad treatment.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2341; Dec. Dig. § 533.*]

3. APPEAL AND ERROR (§ 1051*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

In an action against a carrier for delay in transportation of a shipment of cattle, the admission of the shipper's testimony that he was told by a salesman that the cattle market had been good on a certain day, if erroneous, was harmless where other competent evidence showed the state of the market on such day.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

4. CARRIERS (§ 228*) — INJURIES TO LIVE STOCK—SUFFICIENCY OF EVIDENCE.

In an action against a carrier for injuries to live stock during transportation, where there was evidence tending to show negligent delay, improper handling, and injuries to the cattle at a point in transit, the jury were justified in drawing the inference that the death of one of the cattle, found dead at that point, was so caused.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957–960; Dec. Dig. § 228.*]

Appeal from District Court, Jack County; F. O. McKinzie, Judge.

Action by J. R. Rich and others against the St. Louis & San Francisco Railroad Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

S. C. Rowe and Andrews, Ball & Streetman, all of Ft. Worth, and Stark & Stark, of Jacksboro, for appellant. Sporer & McClure, of Jacksboro, for appellees.

CONNER, C. J. [1] On this appeal appellant complains of a judgment against it for damages in appellee's favor arising out of a shipment of cattle on January 29, 1909, from Jacksboro, Tex., to the National Stockyards at East St. Louis, Ill. The facts show that on the date named appellee shipped 105

head of beef cattle from Jacksboro, consigned to the Godair-Crowley Commission Company, to the National Stockyards, East St. Louis, Ill. The shipment began over the Chicago, Rock Island & Gulf Railway, which issued the contract with destination as stated. When the cattle arrived at Chickasha, Okl., they were tendered for further transportation to the appellant in this case, and appellee was required to execute new contracts. The new contract of shipment with appellant company by its terms made the destination of the shipment "St. Louis, Mo.," and upon the trial below appellant objected to evidence fixing the time of the arrival of the cattle in East St. Louis, and of the state of the market at that place, and other proceedings in the case, for reasons stated in the following proposition, which we quote: "The contract of shipment being in writing, and St. Louis, Mo., being designated therein as the point of destination, the undisputed evidence failing to show a knowledge upon the part of appellant company that the shipment was to be delivered at any other destination than that named in such contract, the plaintiff not having shown that St. Louis was named as the destination through mutual mistake, the measure of plaintiff's damages is the difference between the market value of his cattle at the time and in the condition in which they arrived at St. Louis, Mo., and what would have been their value at the time and in the condition in which they should have arrived at said point if transported with reasonable or ordinary speed and care; but plaintiff and his witnesses should not have been permitted to testify to the value of said cattle at East St. Louis, and such evidence is inadmissible, and the defendant's special charges, the refusal of which is complained of in the fifth and sixth assignments, should have been given to the jury."

We are of the opinion that there is no merit in the proposition. The plaintiff pleaded and proved that the cattle were shipped and billed through from Jacksboro to the Godair-Crowley Commission Company at the National Stockyards, East St. Louis, Ill.; that, when the cattle arrived at Chickasha, the agent of the appellant company demanded and received the contracts issued by the Chicago, Rock Island & Gulf Railway; that the new contract relied upon in this case was presented to and signed by the appellee, as he pleaded, at a time and under circumstances which did not enable him to read it; that, when the cattle arrived in St. Louis, Mo., without request or direction on appellee's part, the appellant company in fact continued the transportation to the National Stockyards, East St. Louis, Ill., where final delivery was made, and where the freight charges were paid; that the contract and bills of the appellant company issued at Chickasha carried the numbers of the cars as given in the Rock Island contract; that

the office of the Godair-Crowley Commission Company was in East St. Louis, Ill.; that, if the Commission Company had an office in St. Louis, appellee knew nothing about it; that there was no extra charge for transportation from St. Louis, Mo., to the National Stockyards; that appellee knew of no commission merchants in St. Louis, Mo., and had never heard of a market for cattle at that place.

Under the circumstances stated, it cannot be reasonably insisted that a distinction should be made between St. Louis, Mo., and the National Stockyards at East St. Louis, Ill. We think it might well be held that we judicially know as a part of the common history of the country that a shipment of cattle for sale on the market at St. Louis, Mo., is intended for delivery at the National Stockyards, East St. Louis, Ill.; but, whether so or not, the evidence referred to clearly shows that, at the time of the execution of the contract in question by the appellant company, it must have known and did know that the destination of the shipment was at the latter point. The court, therefore, properly received the evidence of the time of the cattle's final delivery, and of their condition at the National Stockyards, and properly placed the measure of damages, among other things, upon the difference in market value on Monday, the day of the cattle's arrival, and upon the day following, when for the first time appellee was presented an opportunity to sell on the market. All assignments of error, therefore, dependent upon the question discussed are overruled.

[2] Appellee was permitted to testify over appellant's objection that, in his opinion, the shrinkage of the cattle caused by the treatment they received, and which his testimony gave in detail, over and above "what would have been the shrinkage had they made an ordinary run as is usually made, without any bad treatment, or anything of that kind, was 65 to 70 to 75 pounds, something like that." It is insisted, as was objected at the time, that the testimony involves the opinion of the witness on a mixed question of law and fact, which was for the determination of the court, and therefore that its admission was erroneous. The case of H. & T. C. Ry. Co. v. Roberts, 101 Tex. 418, 108 S. W. 808, and other cases following it are cited. We, however, overrule this objection. It has been often held that a witness who has shown himself to be qualified to so speak may state the usual time of a cattle shipment between points named, or what would be the shrinkage in cattle under given circumstances. Such questions have been uniformly treated as questions of fact, and are entirely distinguishable from the question presented in the Roberts Case, which was whether or not a given run was reasonable. In the case before us it was abundantly shown that appellee was a ship-

per of cattle for sale in the cattle markets of the country of long standing, and well qualified to give the opinions stated in the testimony quoted.

[3, 4] Appellee's evidence to the effect that, when he arrived at the National Stockyards on the evening of the cattle's delivery, the salesman there told him that the market of that day had been good is entirely harmless, if erroneous, inasmuch as other competent evidence showed the state of the market on the days named. It is insisted that the court's charge was erroneous in authorizing a recovery for the value of one of appellee's cattle that was found dead at Sapulpa, Okl., on the ground that there was no evidence as to what caused its death; but we think the evidence justified the charge. There was evidence tending to show negligent delay, improper handling, and injuries to the cattle at this point, and we think it was permissible for the jury to draw the inference that is imputed to the charge criticised.

We have thus briefly disposed of all questions presented, and, having found no reversible error, it is ordered that the judgment be affirmed.