**HINES, Director General of Railroads, et al. v. DAVIS. (No. 1125.)**

(Court of Civil Appeals of Texas. El Paso. Nov. 26, 1920. Rehearing Denied Dec. 16, 1920.)

1. **Appeal and error ⬤⇒971(2)—Witness' qualification to express opinion not reviewed except for manifest mistake.**

The trial court's ruling regarding a witness' qualification to express an opinion will not be reviewed except for manifest mistake or abuse of discretion.

2. **Evidence ⬤⇒491—Witness qualified to state usual time of transporting cattle.**

A witness' testimony that he annually shipped 30 to 100 carloads of cattle between certain points and had accompanied several horse shipments between such points qualified him to state the usual, customary running time between the points involved.

3. **Evidence ⬤⇒472(1)—Opinion as to usual and customary time for cattle to be in transit admissible.**

Testimony regarding the usual and customary time for a cattle shipment to be in transit between specified points held admissible against the objection that it was an opinion on a mixed question of law and fact.

4. **Appeal and error ⬤⇒1070(1)—Verdict according to general charge, instead of erroneous special charge, not reversible error.**

The fact that a verdict was returned in accordance with the general charge, instead of an erroneous special charge tendered by appellant, does not constitute reversible error.

5. **Carriers ⬤⇒228(3)—Evidence as to result of exposing cattle to ticks and fever admissible.**

Where plaintiff claimed his cattle had been depreciated in value during transit by defendant railroad exposing them to ticks and fever, testimony regarding the result of exposing cattle to such diseases is admissible.

6. **Carriers ⬤⇒230(1) — Amount of depreciation in market value of cattle held for the jury.**

Evidence regarding the sales price of cattle transported by defendant railroad, the average excess shrinkage, etc., held to make the amount of depreciation in market value a jury question.

7. **Witnesses ⬤⇒275(8) — Attorney called by adverse party may offer explanation on cross-examination.**

In action for damage to a cattle shipment where defendant required plaintiff's attorney to identify a letter submitting a smaller damage claim than the amount sued for, the witness may explain on cross-examination that he subsequently received additional information regarding the amount of damage.

8. **Carriers ⬤⇒230(3) — Delay in cattle shipment held for the jury.**

Evidence that it required 60 hours to transport cattle between specified points, whereas the usual and customary time was 25 to 30 hours, held to make the issue of delay a jury question.

9. **Carriers ⬤⇒228(5)—Evidence held to establish that carrier placed cattle in unclean pens.**

Evidence that cattle were delivered to defendant railroad and by it delivered to consignee in unclean pens sufficiently establishes that the railroad placed them in the pens, at least in the absence of an explanation by defendant.

Harper, C. J., dissenting.

Appeal from Presidio County Court; K. C. Miller, Judge.

Action by J. W. Davis against Walker D. Hines, Director General of Railroads, and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Beall, Kemp & Nagle and H. Potash, all of El Paso, for appellants.

Mead & Metcalfe, of Marfa, for appellee.

WALTHALL, J. At a former day of the present term of this court we rendered an opinion herein, reversing and remanding this cause, under the impression that the evidence was not sufficient to show the market value of the cattle had they arrived in San Antonio without the injuries complained of. A review of the evidence, however, on motion for a rehearing, convinces us that we were in error in so holding. We now withdraw that opinion and restate the case.

The suit was brought by appellee, J. W. Davis, against Walker D. Hines, Director General of Railroads, and the Galveston, Harrisburg & San Antonio Railway Company, to recover damages growing out of the shipment of 80 head of cattle from Marfa, Tex., to San Antonio, Tex.

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Under instruction of the court the jury found a verdict in favor of the railroad company, and this appeal is prosecuted from a verdict and judgment in favor of appellee and against Walker D. Hines, Director General of Railroads, in the sum of $852.20.

Appellee alleged that his damages were caused by reason of negligent delay and rough handling of the cattle in transit resulting in the total loss of 2 head; depreciation in marketable value in appearance by reason of excess shrinkage and by reason of being unloaded in "unclean pens" at San Antonio, said pens being for cattle coming from an infected district within the state; that the cattle in the shipment came from an area free from ticks and fever, and above what is known as the quarantine line; that he delivered 80 head of cattle for shipment, all in good condition and free from exposure to ticks and fever; that the cattle during transit were in the exclusive control of appellant. Appellee alleged a total damage to said cattle, for which he asked judgment, in the sum of $918.20.

The defendant answered by general demurrer and several special exceptions to the petition, general denial, and special denial of the several facts alleged as causing the items of damage, and pleaded contributory negligence on the part of appellee in not having said cattle dipped at San Antonio, if the cattle had been unloaded in unclean pens.

[1] Appellant complains in the first assignment of the admission in evidence of the statement of the witness Lock as to the usual and customary time for transporting a shipment of cattle from Marfa to San Antonio, the grounds of objection here urged being: First, that the evidence is hearsay, or at best founded on hearsay; and, second, that it is an opinion on a mixed question of law and fact. The qualification of a witness to express an opinion will not be reviewed by the appellate court except in case of manifest mistake or abuse of discretion vested in the trial court. Irrigation Co. v. Smyth, 157 S. W. 261; Ry. Co. v. Norfleet, 78 Tex. 321, 14 S. W. 703; Ry. Co. v. Houghton, 68 S. W. 718; 17 Cyc. 31; 1 Wigmore on Evidence, § 561.

[2] Lock testified that for many years he had bought and shipped cattle between Marfa and San Antonio and knew the usual and customary time for a shipment to be in transit between the two points. The witness testified that for the past six years he had shipped from 30 to 100 carloads each year to Ft. Worth and that 90 per cent. of his stuff would be taken off and fed at San Antonio. Now as a practical matter the courts know that a man who has been shipping cattle thus extensively would know the usual time required for the transportation of cattle from Marfa to San Antonio, just as the courts know that a merchant who for years has

been engaged in business in El Paso knows the usual time for transportation of his freight from St. Louis, Chicago, or New York, to El Paso, although he may never have accompanied a shipment. This testimony alone, we think, warranted the trial court in assuming that the witness was qualified, but that is not all; the witness testified that he had gone to San Antonio himself two or three times with shipments of horses. This testimony alone authorizes the court to treat him as qualified. The qualification by the court to the bill of exception states that in his opinion Lock showed such actual knowledge of the time usually acquired for shipments of live stock from Marfa to San Antonio as to make his testimony relevant.

[3] On the second objection appellant refers us to Houston & T. C. R. Co. v. Roberts, 101 Tex. 418, 108 S. W. 808, as sustaining his contention that the question is a mixed one of law and fact on an issue of negligence vel non. We think, however, the question here is distinguishable from the one presented in that case. In that case the witness was permitted to state what was a "reasonable time" within which to transport a train of cattle from one point to another point when transported with ordinary care and diligence. In this case the witness was permitted to state that he knew the usual and customary time for a shipment to be in transit between Marfa and San Antonio, and to state what that time was. Such questions as are presented in this case have been uniformly treated as questions of fact only. St. Louis & S. F. R. Co. v. Rich et al., 162 S. W. 1194; International & G. N. Ry. Co. v. Parke, 169 S. W. 397; Railway v. Hahn Packing Co., 197 S. W. 1146; Galveston, H. & S. A. Ry. Co. v. Gibbons, 202 S. W. 352; Gulf, C. & F. S. Ry. Co. v. Bogy, 178 S. W. 579.

[4] The special charge offered by appellant being erroneous, it cannot be heard to complain, as in the second assignment, that the verdict is wrongful because the jury did not follow it but decided the issue in accordance with the general charge of the court. Wichita Falls Compress Co. v. W. L. Moody & Co., 154 S. W. 1032; Ry. Co. v. Parish, 18 Tex. Civ. App. 130, 43 S. W. 1066.

[5] Witness Hoffman, properly qualified as an expert, was allowed to testify as to what effect Texas fever and ticks would have on cattle in this shipment. He said:

"As to the effect it would have on cattle coming from above the quarantine line and noninfected cattle to be infected and exposed to ticks and fever—a cow raised above the quarantine line and sent below around any ticks, ticks get on her and cause the Texas fever. Texas fever will kill them. * * * They have different pens at the stockyards for these different cattle. * * * I would say in taking cattle from above the quarantine line and ex-

posing them, putting them in unclean pens, there would be danger of losing cattle putting them in there because they would be subject to become infected with the fever. The ticks do not cause the fever, but they put a germ into the blood that causes the Texas fever."

The cattle came from a county above the quarantine line, and San Antonio is below the quarantine line. The allegations in the petition, in effect, are: That the cattle were free from ticks and fever coming from "free area"; that defendant, in the handling and transportation of said cattle, negligently, wrongfully, and carelessly handled them in such manner that they were unloaded by defendant in what are commonly known as the "unclean pens,". same being pens for receiving cattle infected with or exposed to ticks and fever and coming from within the quarantined area; and by reason thereof said cattle were damaged and greatly depreciated in their marketable value upon the market in San Antonio.

The witness states what would be the result to the cattle of the exposure to ticks and fever. Otherwise it might not be made clear how cattle put in one pen instead of in another pen in the same locality would depreciate in their market value. It was an issue of fact, under the pleading, as to whether the market value of the cattle was really affected by putting them in unclean pens, and the evidence of the witness states the effect ticks and tick fever has upon cattle coming from a clean area. The evidence of the witness, we think, would assist the jury in determining the ultimate issue as to whether the market value of the cattle was depreciated by putting them in the unclean pens.

The ninth paragraph of the charge to which objection is made is as follows:

"If you find for the plaintiff, the measure of his damage as to cattle which were injured while being transported, if any, and those depreciated in marketable value, if any, by reason of being in unclean pens, if any, you find were so unloaded or exposed to infectious diseases, ticks, or fever, if any, would be the difference between the reasonable cash market value of said cattle in San Antonio, Tex., in the condition in which they arrived at said place, and the reasonable cash market value of said cattle at said place, but for said injuries and such exposure to infectious diseases, ticks, and fever."

[6] By the fifth assignment objection is made to said charge submitting the measure of damage to the cattle, on the ground that no evidence is in the record to show what the cattle would have been reasonably worth had they been delivered to the consignee in San Antonio without the injuries complained of, or unloading in unclean pens.

The objection does not go to the form of the charge, but it is insisted that the charge should not have been given, as there is no evidence as to the market value of the cattle had they arrived in San Antonio in proper condition, that is, without delay or rough handling, and without having been unloaded in unclean pens. The account sales was offered in evidence and no objection was made, thereto, and from it there can be ascertained the total weight of the cattle.

The witness Lyford testified:

"I have had 34 years' experience in my present business, about 2½ years cattle salesman. Yes, I sold the cattle in question. I recall this shipment of cattle both from independent recollection and from my records. I looked after the feeding and watering of the cattle, sold them, and then had them weighed by the stockyards company. * * * I made a record of the sale at the time they were sold. My record was made and kept on the yard sales book. * * * They were accurately made and kept, and it was done in the regular course of business. The record shows correctly and accurately the facts to which it pertains, and the facts and figures of the sale and handling of the cattle contained in this shipment. The cattle contained in this shipment were sold by me for the reasonable cash market value for cattle of the kind, character, and description as were contained in this shipment at San Antonio, Tex., at the time these were sold. I hereto attach my record of sales. * * * They were 78 head of cattle delivered to my commission firm by the defendant company at the date this shipment was delivered. * * * The cattle were badly drawn. Quite a number of them had been down in the car and were badly bruised, * * * and were in a general bad and shrunken condition. * * * I should say that the shrinkage was from 40 to 50 pounds per head. I was familiar with the market value of the cattle of the kind, character, and description as were contained in shipment. * * * I know the effect that such a condition as I have described these cattle were in would have upon their sale in the market at that time and place. * * * The condition the cattle were in rendered them less salable and less valuable than if they had come in a good condition. They sold from 2 to 4 cents per pound less than they would have sold if they had been in good shape and in the proper pens. * * * I know that these cattle were unloaded in unclean pens in San Antonio. We handle cattle from both infected and uninfected districts. * * * Unloading them in unclean pens rendered the cattle less salable and less valuable. * * * It would render them less salable and less valuable from 2 to 4 cents per pound."

Witness Rothe, bookkeeper of the commission company that handled the cattle shipment at San Antonio, testified as to how the sales account was kept and entry made on the books of the company, and stated that the accounts kept show accurately the facts to which they pertain, and attached to his deposition a true and correct copy of the record of the sale of the cattle. His copy of the record was used as an exhibit on the trial. The records of sales of the cattle

(Exhibits 2 and 3) show the average weight of the cattle sold and the price per hundred pounds for which the cattle sold. The account sales as found in the record, and as testified to by Lyford and Rothe, show the price per hundred for which the different groups of cattle in the shipment sold, and the average weight of the cattle, describing each as a cow, steer, or yearling. Having the sale price and the average excess shrinkage given, the value of the loss is ascertained. St. L. S. F. & F. Ry. Co. v. Smith, 53 Tex. Civ. App. 42, 115 S. W. 882; Schaff v. Fancher, 215 S. W. 861.

[7] By the sixth assignment objection is made to the admission of Metcalfe's testimony. Defendant called Metcalfe to the stand. Metcalfe was one of the plaintiff's attorneys and he identified a letter which his firm had written to the general claim agent wherein only $333.20 was claimed as damages and no claim made on account of the cattle being placed in unclean pens. Defendant then offered that letter in evidence. Now it is manifest that defendant did this for the purpose of discrediting the claim on account of putting the cattle in unclean pens and for the purpose of showing a want of merit in that feature of the claim. In this condition of the record, it was certainly competent for plaintiff, upon cross-examination, to develop from the witness that at the time he wrote that letter he had only the account sales as a basis of his information, and that later in correspondence with Lyford he then learned that the cattle had been damaged 2 to 4 cents per pound by reason of being unloaded in unclean pens, and that he immediately wrote the second letter to the claim agent giving those figures supplementing the claim and stating that they would expect settlement on that basis. The above is shown by the statement of facts. The bill of exception is qualified by the court as follows:

"The foregoing bill of exception having been presented to me, it is approved with the following explanation and qualification:

"The witness H. O. Metcalfe, one of the attorneys for the plaintiff, was called to testify by the defendant and was caused to identify a letter which the defendant then introduced in evidence, written by Mead & Metcalfe, the plaintiff's attorneys, to Mr. J. D. McCranney, general claim agent of the Galveston, Harrisburg & San Antonio Railway Company, under date of December 30, 1918, in which letter said attorneys on behalf of the plaintiff set up a damage claim against the defendant company for $333.20, said claim being for injury and shrinkage to cattle. The defendant's counsel also proved by the plaintiff that his claim was originally filed for $333.20 and that nothing was said originally about the cattle being damaged by being unloaded in unclean pens. The court then permitted the witness H. O. Metcalfe, on cross-examination, to explain why it was that the claim was later increased when the suit was filed and in connection therewith. The witness testified that he first received the information upon which the suit was filed from Mr. Lyford. Besides, the statement of this witness as to what Mr. Lyford told him as complained of in the bill of exception was only a repetition of the testimony given by the witness Lyford by deposition in the trial of the case, which testimony was allowed over the objection of defendant; he having testified that the cattle were damaged to the amount named by being unloaded in the unclean pens."

This shows no more than an explanation by the witness of the reason why the claim on account of the unclean pens was not set up in the original letter and was competent to offset the effort made by the defendant to discredit that claim.

[8] The ninth assignment is that the court erred in submitting any issue as to delay in transportation because there was no evidence of delay. In the first place, it is doubtful whether the objections to the charge presented in the court below raises this question; but, waiving that, the evidence does raise the issue of delay. The shipping contract was dated December 9th, and shows that the cattle were loaded at 10:30 p. m. The witness Lyford testified that the cattle were delivered to his firm by the defendant on December 12, 1918. This shows that approximately 60 hours had elapsed from the time the cattle were received by the defendant before the defendant delivered same to the consignee. In the absence of any explanation by defendant, this, in our opinion, raises an issue of delay; it having been shown that the usual and customary time for such transportation was from 25 to 30 hours.

[9] The tenth assignment is to the effect that there was no evidence that the cattle were unloaded in unclean pens by any agent or employee of the defendant. No objection of this kind was urged in the court below to the charge. The witness Lyford testified that he knew they were unloaded in unclean pens and he first saw them there. The cattle having been delivered to the railroad company and delivered by the railroad company to the consignee in unclean pens sufficiently showed that the defendant did it. Certainly so in the absence of any explanation from defendant.

The verdict is not excessive as claimed by the eighth assignment.

On a reconsideration of the entire case, we have concluded that this record presents no reversible error, and that the case should be affirmed.

Affirmed.

HARPER, C. J. (dissenting). First assignment: Testimony of Lock that he knew the usual and customary time for a shipment of cattle to be in transit between Marfa and San Antonio, Tex., to be from 25 to 30 hours,

was objected to upon the grounds that the witness was not qualified to give such testimony. The objection was overruled, and thereafter upon cross-examination he testified:

"The only thing I know about the usual and customary transit time is what I have learned from my men or what my accounts sales show."

Whereupon counsel for defendant moved the court to strike out the witness' testimony as to customary transit time, upon the ground that it was hearsay. It seems to me that it was error to refuse to exclude this testimony upon motion for the reason that it is pure hearsay, being apparent that the testimony is not based upon personal knowledge.

I think the sixth is also well taken. Metcalfe's testimony that Lyford wrote him the cattle were put in unclean pens was pure hearsay, and calculated to have its effect upon the jury in arriving at its verdict.

The fifth urges that the court should not have submitted the case at all for the reason that there is no evidence as to the measure of damages. The ninth says, there being no evidence of delay and rough handling, this question should not have been submitted as a basis of recovery. And 10 is that, there being no evidence that the cattle were placed in unclean pens by the defendant or its agent, there is no proper basis for a recovery upon that act of negligence charged. Believing, as I do, that the testimony of Lock as to usual and customary time for shipment to San Antonio from Marfa, and being no other evidence upon the point, should have been excluded, there is no evidence in the record upon which to base a recovery for delay, and the only evidence which attempts to fix a measure of damages is that of the agent of the purchaser, Lyford, and his basis is fixed by the two statements: First, that the shrinkage was from 40 to 50 pounds per head; and, second, that they sold from 2 to 4 cents per pound less than they would have sold for if they had been in good shape and in the proper pens. Since we are without evidence of negligent delay, there is nothing left as a basis for a recovery of damages except that of placing the cattle in unclean pens, and there is no way the jury could have found what loss was occasioned by placing in unclean pens, and that caused by shrinkage. In fact, the record is silent as to who in fact unloaded the cattle so as to charge the defendant with any negligence because of their being in unclean pens. And plaintiff has pleaded that these cattle "were billed to Ft. Worth with the privilege of receiving and unloading same for sale at San Antonio." (Supp. pet. pp. 53, 54.) The clear meaning of this is that plaintiff should unload at San Antonio.

For the reason that there is no evidence of actionable negligence upon the part of defendant the court erred in submitting the case, and, for that reason, and, because of the improper admission of testimony, I am of the opinion that the case should be reversed and remanded. I therefore enter my dissent.